IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2020 DEC 14 P 1: 25
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | |
|---|---|
| **SANDY JO STANLEY,**<br><br>   **Plaintiff,**<br><br>v.<br><br>**NEPTUNE TECHNOLOGY GROUP,**<br><br>   **Defendant.** | **CIVIL ACTION NO.:**<br>2:20-cv-01034-SMD<br><br>**DEMAND FOR JURY** |

## COMPLAINT

Comes now the Plaintiff, SANDY JO STANLEY, and files her Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 and 42 U.S.C § 12117(a) for violation of the Americans with Disabilities Act (ADA), for her being discharged because of a disability, showing to the court as follows:

### JURISDICTION AND VENUE

Jurisdiction is conferred under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 and 42 U.S.C 12117(a), the Americans with Disabilities Act of 1990 (ADA).

The violation of the Plaintiff's rights as alleged herein occurred in Elmore County, Alabama, and within the Middle District of Alabama.

## PARTIES

1) The Plaintiff, SANDY JO STANLEY, (hereinafter "Plaintiff") is over the age of nineteen years, is a resident of Elmore County, Alabama, and was no at the time of the incidents which form the basis of this lawsuit. Plaintiff is a former employee of Neptune Technology Group, Inc.

2) The Defendant, Neptune Technology Group, Inc., (hereinafter "Defendant") is a foreign corporation authorized to do and doing business within the State of Alabama, in Elmore County.

## FACTUAL ALLEGATIONS RELATED TO VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT (ADA)

3) Plaintiff is a qualified individual with a disability in accordance with the Americans with Disabilities Act and a covered entity as defined under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C § 12111(4).

4) Defendant employs 500 or more employees and is located in the State of Alabama, Elmore County.

5) Plaintiff was employed by Defendant for over 16 years.

6) In 2008, Plaintiff underwent shoulder surgery for a tear in her rotator cuff due to a job-related injury.

7) Since 2008, Plaintiff has continued to receive treatment for pain from her injury.

8) Plaintiff made a request for a reasonable accommodation pursuant to the Americans With Disabilities Act.

9) Defendant denied said request, thereby constructively terminating her employment.

10) A new MRI performed during the time period in which the constructive termination occurred showed a new tear in Plaintiff's rotator cuff.

### Facts Specific to Plaintiff's Request for Accommodation

11) Even after her shoulder surgery in 2009, Plaintiff was never without pain. She kept working through the pain and eventually began receiving injections in her should at Alabama Orthopedic Specialists in Montgomery, Alabama, to help ease the pain.

12) When the injections into Plaintiff's shoulder stopped being helpful, Plaintiff was referred to a neurosurgeon who gave Plaintiff pain injections in her neck. After each injection, Plaintiff was not allowed to operate a motor vehicle for a period of 24 hours. Each injection relieved Plaintiff's pain for a approximately a week to 10 days. Plaintiff's worker's compensation benefits paid for her medical treatment, and Plaintiff continued to work.

13) In 2017, the worker's compensation company assigned to Plaintiff's case continued to pay for Plaintiff's pain injections. However, they ceased to pay

Plaintiff for the 24-hour period during which she was not allowed to operate a motor vehicle or heavy equipment following each injection.

14) In 2019, Plaintiff's pain grew worse. She went back to Alabama Orthopedic Specialists and received another injection into her shoulder. Dr. Walcott suggested at that time that Plaintiff talk with her supervisor and make a request to be moved to a department within the company that did not require her to continue the repetitive motions that her work required.

15) Plaintiff contacted Jill Samuelson in the Human Resources Department at Neptune and relayed to Ms. Samuelson that Dr. Walcott suggested. Ms. Samuelson told the Plaintiff that there was nothing that could be done to change her work.

16) Dr. Walcott then put Plaintiff on three weeks' light duty in order to give the inflammation in her shoulder time to heal. He suggested that Plaintiff have minimum use of her right shoulder and arm during that three-week period of time.

17) Ms. Samuelson wanted Plaintiff to stay home during the three-week period of time, but Sharita Anderson (the worker's compensation nurse) said that Plaintiff would not receive any worker's compensation benefits if she stayed home. (They would pay for the shots, but not Plaintiff's time away from work.)

18) Plaintiff was then assigned to a job in Department 58-3. That job was basically the same as the job that had caused her injury. However, Department 58-

4

3 operated at a slower pace. Although Plaintiff could use her right arm less frequently, she was still required to use it in this "light duty" job that was essentially not "light duty" at all.

19) Neptune then shut down Department 58-3. Plaintiff asked that she be reassigned to Department 58-2, which would allow her to use her left arm more than her right arm. She was denied that request. Plaintiff was told she would have to return to Department 58-1.

20) Department 58-1 is the department that Plaintiff could not work in because of her injury. She told her supervisor that she could not handle the pace of Department 58-1 with the pain in her shoulder. Department 58-1 builds about 4,000 water meters daily, with about 11 employees in that Department. Everybody in that department rotates around from the "build" side to the "packing" side. That was October, 2019.

21) When Plaintiff told her supervisor, Rob Baker, that she could not go back to Department 58-1, he told her she had no choice and started to "write up" Plaintiff for insubordination.

22) Plaintiff then caught the attention of Mr. Baker's supervisor, Mr. Ian McMillan. Plaintiff, Mr. Baker, and Mr. McMillan went into Mr. Baker's office to discuss the issues.

5

23) Plaintiff told Mr. Baker and Mr. McMillan that she could not handle the speed of Department 58-1 with the pain in her shoulder, and she was again told that she had no choice. Mr. McMillan told her, "You just mash a button." However, there is much more required of an individual in Department 58-1 than pressing a button.

24) Finally, Mr. Baker and Mr. McMillan said they would speak with Mr. Rod Wallace (who is Mr. McMillan's supervisor) and with Nurse Sharita Anderson. There was not any write-up.

25) Plaintiff went back to the floor at tear-down and waited until Mr. Wallace arrived. She went into Mr. Wallace's office and told him about the prior meeting she had had with Mr. Baker and Mr. McMillan. Mr. Wallace asked her if she had explained carefully to them the situation with her shoulder, but indicated to Plaintiff that he had no control over the situation.

26) Plaintiff asked Neptune for a reasonable accommodation so that she could be relieved of the strenuous, repetitive work required of her in Department 58-1. She was denied the accommodation and was told she must continue to work in Department 58-1.

27) After the meeting with Mr. Wallace, Plaintiff clocked out and went home. She did not go back to work and used vacation leave, "occurrence time," and FMLA (allowed three days per month).

28) On October 4, 2019, Plaintiff texted Jill Samuelson. On October 7, 2019, Jill Samuelson sent a text to Plaintiff stating that she was out of the office for the week due to an emergency. Ms. Samuelson, however, did not make any arrangements for anyone else in the HR Department at Neptune to contact Plaintiff.

29) On October 17, 2019, Dr. Walcott made a new MRI of Plaintiff's shoulder. According to Dr. Walcott, the MRI showed that there is a tear in Plaintiff's rotator cuff and that she may need additional surgery to repair that. He suggested that she may need another surgery which would be the same,

30) On October 24, 2019, Jill Samuelson called Plaintiff and asked her whether she had "called in" for that day. When Plaintiff said that she had not called in, Ms. Samuelson told Plaintiff that she (Plaintiff) had "quit her job." Plaintiff has not been allowed to return to work.

31) There were reasonable accommodations that could have been made in the form of other jobs at the same facility

## COUNT I

### Violations of the Americans with Disabilities Act

#### (Failure to Accommodate)

32) Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

33) Defendant Neptune Technology Group, Inc., violated the Americans with

Disabilities Act (ADA) after a request for reasonable accommodation was made by failing to make adequate job accommodations, engage the Plaintiff in the interactive process to make job accommodations, and maintaining an inflexible leave policy which did not provide for reasonable accommodations discussions, but instead provided for termination of employment, in violation of the ADA.

34) Plaintiff claims of the defendant compensatory damages including back pay provided by 42 U.S.C. § 12117 and 42 U.S.C §2000e-5 and any other enhancement or damages that may be provided by law. Compensatory damages include back pay and any other compensable damages that were proximately caused by violation of the law. Plaintiff also claims attorneys' fees pursuant to 42 USC § 12205.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff respectfully requests the Court to:

a) Permanently enjoin the defendant, its agents, successors, officers, employees, attorneys, and those acting in concert with them from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all other practices shown to be in violation of applicable law;

b) Order modification or elimination of practices, policies, customs, and usages set forth herein and all other such practices shown to be in violation of applicable law h herein and all other such practices shown to be in violation of applicable law.

c) Grant compensatory damages against the defendant, including but not limited to, back pay, loss of fringe benefits, and loss of career advancement.

d) Grant punitive damages to the maximum provided by law.

e) Reinstate Plaintiff's employment with Defendant.

f) Order an award of cost and Attorneys fees to Plaintiff.

## COUNT II

### Retaliatory Discharge

35) Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

36) Plaintiff alleges she is the victim of a retaliatory discharge by Neptune Technology Group, Inc.

37) The Plaintiff is a member of a protected class under the Americans with Disabilities Act.

38) The Plaintiff engaged in a protected activity by asking for a reasonable accommodation. The Defendant willfully and intentionally discriminated the Plaintiff for engaging in the protected activity which lead to the retaliatory discharge of the Plaintiff.

## **PRAYER FOR RELIEF**

Wherefore, premises considered, Plaintiff respectfully request the Court to:

a) Permanently enjoin the defendant, its agents, successors, officers, employees, attorneys, and those acting in concert with them from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all other practices shown to be in violation of applicable law;

b) Order modification or elimination of practices, policies, customs, and usages set forth herein and all other such practices shown to be in violation of applicable law h herein and all other such practices shown to be in violation of applicable law.

c) Grant compensatory damages against the defendant, including but not limited to, back pay, loss of fringe benefits, loss of career advancement.

d) Grant punitive damages to the maximum provided by law.

e) Reinstate Plaintiff's employment with Defendant.

f) Order an award of cost and Attorneys fees to Plaintiff.

## COUNT III

### Injunctive Relief

39) Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

40) Plaintiff requests that the Defendant be enjoined from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, or any other equitable relief as the court deems appropriate.

### PRAYER FOR RELIEF

WHEREFORE THE PREMISES CONSIDERED, the Plaintiff respectfully requests the Court to:

a) Enter a judgment that the discriminatory practices complained of herein are unlawful and violative of the Americans with Disabilities Act of 1990 (ADA);

b) Permanently enjoin the defendant, its agents, successors, officers, employees, attorneys, and those acting in concert with them from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all other practices shown to be in violation of applicable law;

c) Order modification or elimination of practices, policies, customs, and usages set forth herein and all other such practices shown to be in violation of applicable law;

d) Grant compensatory damages against the defendant, including back pay;

e) Grant Punitive damages to Plaintiff against Defendant for the maximum allowed by law;

f) Grant Plaintiff the cost of this action including reasonable attorney's fees;

g) Grant pre-judgment and post-judgment interest at the maximum rate allowable by law;

h) Grant such other, further and different relief as this Court may deem just, and all other equitable and legal relief as to which Plaintiff may be entitled.

**The Plaintiff Requests Trial by Jury.**

Respectfully submitted,

*/s/ John Michael Segrest*
John Michael Segrest (ASB-8306-H58S)
Attorney for Plaintiff
The Segrest Law Firm
P.O. Box 780791
Tallassee, AL 36078
Telephone: 334-252-0036
Facsimile: 334-252-0037
Mike.Segrest@Segrestlaw.com